[No. A127375. First Dist., Div. Three. Jan. 18, 2011.]

JATINDER KULLAR et al., Plaintiffs and Respondents, v.
FOOT LOCKER RETAIL, INC., Defendant and Respondent;
CRYSTAL ECHEVERRIA et al., Objectors and Appellants.

[No. A127376. First Dist., Div. Three. Jan. 18, 2011.]

CRYSTAL ECHEVERRIA et al., Plaintiffs and Respondents, v.
FOOT LOCKER RETAIL, INC., Defendant and Appellant;
JATINDER KULLAR et al., Respondents.

## COUNSEL

Qualls & Workman, Daniel H. Qualls, Robin G. Workman and Aviva N. Roller for Objectors and Appellants and for Plaintiffs and Respondents.

Miller Law Group, Tracy Thompson, Timothy C. Travelstead and Joseph P. Mascovich for Defendant and Respondent and for Defendant and Appellant.

## OPINION

**POLLAK, J.**—The defendant in these consolidated class actions appeals from an order denying its motion to disqualify the attorneys for parties who have objected to the proposed settlement agreement in the first of these cases and are the plaintiffs in the second action in which a class has not yet been

certified. We agree with the trial court that the filing of the second action has not created a conflict of interest requiring counsel's disqualification.

## Background

This court previously vacated an order of the trial court approving a settlement of the class action brought on behalf of employees of Foot Locker Retail, Inc. (Foot Locker), against Foot Locker. (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116 [85 Cal.Rptr.3d 20].) The appeal resulting in that disposition was prosecuted by the law firm of Qualls & Workman, LLP (Q&W), on behalf of three objectors to the settlement, Crystal Echeverria, John Kissinger and Nichole Payton. This court held that the information that had been presented to the trial court was insufficient to support its determination that the settlement agreement was fair, reasonable and adequate, and we "remand[ed] the matter to permit the trial court to reconsider the fairness and adequacy of the settlement in light of such additional information as the parties may present concerning the value of the class members' claims should they prevail in the litigation and the likelihood of their so prevailing." (*Id.* at p. 120.)

Prior to the trial court's approval of the settlement in the *Kullar* action (*Kullar v. Footlocker*, No. CGC-05-447044 (*Kullar*)), Echeverria, represented by the same attorneys, had filed a partially overlapping putative class action against Foot Locker and others in the Alameda County Superior Court (*Echeverria v. Foot Locker, Inc.*, No. RG07317036 (*Echeverria I*)). Because of the pendency of the settlement in the *Kullar* action, the Alameda court entered an order staying *Echeverria I*, which remained in effect through the pendency of the *Kullar* appeal. On April 15, 2009, one month after issuance of the remittitur in *Kullar*, Echeverria and the two other objectors represented by Q&W filed an action in the San Francisco Superior Court, where *Kullar* was pending, asserting the same claims as were alleged in the stayed Alameda action (*Echeverria v. Footlocker*, No. CGC-09-487345 (*Echeverria II*)). Based on the pendency of identical claims in *Echeverria I*, the San Francisco court on July 29, 2009, stayed proceedings in *Echeverria II*. In subsequent proceedings in *Kullar*, the court considered the additional showing made to establish the fairness of the proposed settlement and the three objectors' renewed objections to settlement approval, and on October 22, 2009, the court again granted final approval of the class settlement.[1] Echeverria dismissed the Alameda action and on November 17, 2009, the San Francisco court lifted the stay in *Echeverria II*.

---

[1] Judgment was not entered at that time and the propriety of that approval is not now before the court or an issue in this appeal.

On December 2, Foot Locker filed motions to disqualify Q&W as counsel in both *Kullar* and *Echeverria II*. Foot Locker argued, "By knowingly representing both the objectors to the *Kullar v. Foot Locker* settlement and putative class members in the *Echeverria v. Foot Locker* case who want to participate in that settlement, Dan Qualls has a conflict of interest that requires disqualification from both matters." At a hearing on December 17, the court denied both motions, explaining that it saw no conflict of interest in that Q&W and Mr. Qualls were advocating consistent positions in both cases and that there was no reason to believe that the attorneys were acting out of any improper motives. Foot Locker has timely appealed.[2]

## Analysis

The proposed settlement agreement in *Kullar* settles claims of a class of designated employees of Foot Locker during the period between November 23, 2001, and May 25, 2007. The claims are based on numerous alleged violations of law, including the failure to compensate employees for the compulsory purchase of certain shoes and uniforms, the failure to compensate employees for time devoted to security searches, and the failure to provide mandated meal and rest periods and to pay appropriate wages by failing to compensate for time designated as meal periods when the employees were required to work. The complaint in *Echeverria II* seeks recovery on behalf of those employed by Foot Locker on an hourly basis during the period between four years of the filing of the *Echeverria I* complaint, i.e., March 22, 2003, and the filing of the complaint in *Echeverria II*, April 15, 2009, based solely on Foot Locker's alleged failure to provide those employees with meal periods and as a consequence to compensate them appropriately.

Foot Locker's motion to disqualify Q&W is based on the fact that members of the putative class described in *Echeverria II* are also members of the class covered by the proposed settlement agreement in *Kullar*. Foot Locker contends that "a simultaneous conflict of interest" arises from the attorneys purporting to represent these employees in *Echeverria II* and at the same time, representing objectors to the *Kullar* settlement, thereby "taking actions to block distribution of over one million dollars in settlement money to over 1,500 current and former Foot Locker employees," among whom are putative class members they seek to represent in *Echeverria II*. Foot Locker argues that by representing those who object to the settlement, the attorneys

---

[2] Although the preferred and more expedient method of challenging an order denying a motion to disqualify counsel is by seeking a writ of mandate, such an order is appealable. (*Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1263–1264 [24 Cal.Rptr.3d 818]; *Meehan v. Hopps* (1955) 45 Cal.2d 213 [288 P.2d 267].)

are representing parties whose interests are directly antagonistic to the interests of all other members of the putative *Echeverria II* class who are also members of the *Kullar* class, who they assert have "affirmatively stated they favor" the *Kullar* settlement. While it is an overstatement to say that the class members who have not objected to or opted out of the proposed *Kullar* settlement necessarily favor the settlement, it is reasonable to assume that some, and perhaps many or most, of these individuals prefer to accept the benefits of the settlement rather than pursue the claims for additional recovery in the *Kullar* action. Nonetheless, there are several reasons for which Q&W's participation in both of these cases does not violate the proscription against the representation of clients with adverse interests, as Foot Locker contends.[3]

Initially, since no class has yet been certified in *Echeverria II* (and no class was ever certified in *Echeverria I*), no attorney-client relationship has yet arisen between Q&W and the members of the putative class. (*Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867, 873 [212 Cal.Rptr. 773] ["We cannot accept the suggestion that a potential (but as yet unapproached) class member should be deemed 'a party . . . represented by counsel' even before the class is certified; we respectfully disagree to this extent with the federal courts which apparently would accept it."]; *Sharp v. Next Entertainment Inc.* (2008) 163 Cal.App.4th 410, 433 [78 Cal.Rptr.3d 37], citing com. 25 to rule 1.7 of the ABA Model Rules of Prof. Conduct ["When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule [that restricts representation when there are concurrent conflicts of interest]."]; *In re McKesson HBOC, Inc. Securities Litigation* (N.D.Cal. 2000) 126 F.Supp.2d 1239, 1245; Cal. Compendium on Prof. Responsibility, L.A. County Bar Assn. Formal Opn. No. 481 (Mar. 20, 1995).)

Foot Locker cites cases that clearly are inapposite to establish that an attorney may incur fiduciary obligations to an individual even though an attorney-client relationship has not arisen. Most involve situations where there were preliminary consultations between the individual and the attorney

---

[3] Foot Locker contends that Q&W's conduct violates rule 3-310(C) of the Rules of Professional Conduct, which provides, "A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

looking to the retention of the attorney but the potential client did not hire the attorney. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135 [86 Cal.Rptr.2d 816, 980 P.2d 371]; *Beery v. State Bar* (1987) 43 Cal.3d 802 [239 Cal.Rptr. 121, 739 P.2d 1289].) Closer to the mark is the court's statement in *In re GMC Pick-up Truck Fuel Tank Products Liability Litigation* (3d Cir. 1995) 55 F.3d 768, 801: "Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed." This statement—which, it should be noted, recognizes that putative class members are not clients of the attorney—was made in the context of considering the propriety of certifying a settlement class, with little application to the present situation. Moreover, assuming that Q&W assumed some fiduciary obligations to members of the putative class they seek to represent, no authority has been cited suggesting that those obligations preclude the attorneys from urging that a proposed settlement in related litigation is not in the best interests of the class. (Cf. *Schick v. Berg* (S.D.N.Y., Apr. 24, 2004, No. 03 Civ. 5513 (LBS)) 2004 U.S.Dist. Lexis 6842, *19, affd. (2d Cir. 2005) 430 F.3d 112 [attorney owed putative class member a duty not to prejudice putative class member's rights in the action in which class certification was sought, but duty did not extend to refraining from advising a third party to sue putative class member].)

■ More fundamentally, as the trial court observed, there is no conflict of interest requiring disqualification. The issue to which the objectors and their attorneys directed their argument in *Kullar* is whether the proposed settlement is fair and reasonable, and whether the settling parties have made a sufficient showing that it is. While other unnamed class members in *Kullar* may not have filed objections to the settlement or opted out of the settlement, they have not expressly indicated they believe the settlement is in their best interests or that they are not entitled to a greater recovery than provided in the settlement agreement. As we pointed out in our prior opinion in this case, it is the court that has the ultimate responsibility to determine the fairness and adequacy of the settlement. (*Kullar v. Foot Locker Retail, Inc., supra*, 168 Cal.App.4th at p. 129.) The class representatives (and their attorneys, as well as Foot Locker and its attorneys) disagree with the objectors and their attorneys over this issue and they have submitted their respective arguments to the court for decision. While the consequence of the objectors prevailing would be to forestall the recovery class members will receive under the proposed settlement, such may nonetheless be in their best interests if they are likely to obtain a much greater recovery by pursuing the litigation. There is no more of a conflict between the objectors (and their attorneys) and the

unnamed members of the class who favor the settlement than there is between the class representatives (and their attorneys) and unnamed members of the class who do not favor the settlement but who have refrained from expressing their views and do not want to be excluded from the recovery if the settlement is approved.

■ The putative class members favoring the proposed *Kullar* settlement may be adverse to objectors in the sense that they disagree as to the adequacy of the settlement and in their desire to have it approved or rejected (cf. *Lazy Oil Co. v. Witco Corp.* (3d Cir. 1999) 166 F.3d 581, 589), but their common interests in the outcome of the litigation are unaffected by that disagreement. There is no suggestion that Q&W has obtained any confidential information from the putative class members who favor the settlement, nor have the attorneys engaged in any conduct displaying disloyalty to any of the putative class members. Disqualification under the circumstances here would be no more justified than the automatic disqualification of class counsel whenever a dispute arises among class members or class representatives as to the advisability of settlement. (See *ibid.*; *In re Corn Derivatives Antitrust Litigation* (3d Cir. 1984) 748 F.2d 157, 162 (conc. opn. of Adams, J.); *In re "Agent Orange" Product Liability Litigation* (2d Cir. 1986) 800 F.2d 14, 18–19.)

The authority that comes closest to supporting Foot Locker's position is a decision rendered by a member of this panel when sitting on the United States District Court. (*Moreno v. AutoZone, Inc.* (N.D.Cal., Dec. 6, 2007, No. C05-04432 MJJ) 2007 U.S.Dist. Lexis 98250.) However, the situation in that case was significantly different from the situation here. In *Moreno*, the court disqualified attorneys from continuing to represent a putative class because, without obtaining waivers, the attorneys represented members of the putative class in opposing the settlement of a related class action and the putative class also included members who favored settlement of the other case. Unlike the situation here, the putative class members who favored settlement of the other action were not unknown or unspecified individuals with whom no attorney-client relationship had yet developed, but three identified persons from whom the attorneys had obtained declarations and whom the attorneys personally represented at depositions in the action in which they were disqualified. While the attorneys were representing persons who objected to the settlement of the other action, the three individuals with whom they also had an attorney-client relationship "approved the settlement, submitted claim forms, and await payment." (*Id.* at p. *13.) Moreover, the attorneys had withheld information from the three clients who favored the settlement. Still further, the court found that the attorneys had committed two other ethical breaches while involved in the litigation from which they were disqualified. There was no similar misconduct by Q&W in this case. The logic of *Moreno* does not require disqualification here.

## Disposition

The order denying the motions to disqualify counsel in both cases is affirmed.

McGuiness, P. J., and Jenkins, J., concurred.

The petition of respondent Foot Locker Retail, Inc., for review by the Supreme Court was denied April 27, 2011, S190995.